## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GALE CARTER and FORBES HAYES, *on behalf of themselves and those similarly situated,* | INDIVIDUAL AND COLLECTIVE ACTION FOR UNPAID MINIMUM WAGES UNDER FLSA |
| Plaintiffs, | CLASS ACTION UNDER TRUTH IN LEASING ACT, FEDERAL FORCED LABOR STATUTE, UNJUST ENRICHMENT |
| v. | |
| PASCHALL TRUCK LINES, INC., 3443 Highway 641 South P.O. Box 1080 Murray, KY 42071 | JURY TRIAL DEMANDED |
| and | No. |
| ECN Financial LLC 655 Business Center Drive, Suite 250 Horsham, PA 19044 | |
| and | |
| PNC Equipment Finance, LLC 300 Fifth Ave. Pittsburgh, PA 15222 | |
| and | |
| JOHN DOES 1-20 | |
| Defendants. | |

## INDIVIDUAL, COLLECTIVE, AND CLASS ACTION CIVIL COMPLAINT

Named Plaintiffs Gale Carter and Forbes Hayes (hereinafter "Named Plaintiffs"), individually and on behalf of themselves and those similarly situated, by and through undersigned counsel, hereby complain as follows against Defendants Paschall Truck Lines, Inc. (hereinafter "Defendant PTL"), ECN Financial LLC (hereinafter "Defendant Element"), PNC Equipment

Finance LLC (hereinafter "Defendant PNC") and John Does 1-20 (hereinafter collectively "Defendants").

## INTRODUCTION

1.    Named Plaintiffs have initiated the instant action to redress Defendants' violations of the Fair Labor Standards Act ("FLSA"). Named Plaintiffs assert that Defendants erroneously designated Named Plaintiffs and those similarly situated as independent contractors and unlawfully deducted from and withheld portions of the wages owed to Named Plaintiffs and those similarly situated. Specifically, Defendants required Named Plaintiffs and those similarly situated to cover the costs of Defendants' business, intentionally reducing the wages of Named Plaintiffs and those similarly situated below the minimum wage.

2.    Named Plaintiffs have initiated the instant action to redress Defendant PTL's violations of the Truth in Leasing Act, 49 U.S.C. §14704 ("TILA"). Named Plaintiffs assert that Defendant PTL entered into leases with Named Plaintiffs and those similarly situated that violated the provisions of the TILA.

3.    Named Plaintiffs have initiated this action to redress Defendants' violations of the Federal Forced Labor statute, 29 U.S.C. § 1589 ("FFL"). Named Plaintiffs assert that Defendants perpetuated a scheme to tie lease operators treated as independent contractors to labor for Defendants for long periods of time under threat of serious financial harm.

4.    Named Plaintiffs have initiated this action to redress Defendant PTL's violations of the common law for unjust enrichment on behalf of themselves and all those similarly situated.

## JURISDICTION AND VENUE

5.    The foregoing paragraphs are incorporated herein as if set forth in their entirety.

6.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims herein arise under laws of the United States, the FLSA, 29 U.S.C. § 201 *et seq.,* the FFL, 18 U.S.C. § 1589, and the TILA, 49 U.S.C. §14704, *et seq.*  This Court has supplemental jurisdiction over Named Plaintiffs' state law claims because those claims arise out of the same nucleus of operative fact as the federal claims.

7.     This Court also has jurisdiction over Named Plaintiffs' state law claims pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5 million and at least one member of the putative class is domiciled in a state different from the domicile of any Defendant.

8.     This Court may properly maintain personal jurisdiction over Defendants, because Defendants' contacts with this state and this jurisdictional district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, and because Defendants have consented to jurisdiction in this court via a Choice of Law and Venue clause contained within the lease agreements between Plaintiffs and Defendant Element, to which all Defendants are parties.

9.     Venue is properly laid in this judicial district pursuant to 29 U.S.C. § § 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

10.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

11.     Named Plaintiff Gale Carter is an adult individual residing at 3670 Buckingham CV E Horn Lake, MS 38637.

12.    Named Plaintiff Forbes Hayes is an adult individual residing at 705 Harwell Drive Brunswick, GA 31532.

13.    Defendant PTL is a truckload carrier operating throughout the United States. Defendant PTL is a corporation with its principal place of business as set forth in the caption.

14.    Defendant PTL maintains a terminal in Philadelphia, Pennsylvania and delivers freight throughout Pennsylvania on a regular basis.

15.    Defendant Element is a Delaware Corporation with its principal place of business as indicated in the caption.  Defendant Element provided equipment financing to Defendant PTL during the relevant time period and received the benefit of illegal agreements between Defendant Element and Named Plaintiffs and those similarly situated by conspiring with Defendant PTL to deny Named Plaintiffs and those similarly situated the benefits afforded to them under federal and state law.

16.    Defendant PNC is a Delaware Corporation with its principal place of business as indicated in the caption.  Defendant PNC is a successor in interest to Defendant Element that provides equipment financing to Defendant PTL and received the benefit of illegal agreements between Defendant Element and Named Plaintiffs and those similarly situated by conspiring with Defendant PTL to deny Named Plaintiffs and those similarly situated the benefits afforded to them under the FLSA and state law.

17.    Defendants engaged in a scheme whereby Defendant Element leased tractor trailers to Named Plaintiffs, Class Plaintiffs and Collective Plaintiffs (hereinafter collectively "Plaintiffs"), who in turn subleased said tractor trailers and their driving services to Defendant PTL, permitting Defendant PTL to misclassify Plaintiffs as independent contractors, deprive Plaintiffs of their rights under federal and state law, and pass their business expenses on to Plaintiffs.

18.     As a condition of their employment for Defendant PTL, Defendant PTL required Plaintiffs to enter into Individual Program Lease Agreements ("Lease Agreements") with Defendant Element whereby Plaintiffs leased tractors from Defendant Element.

19.     The Lease Agreements state that Plaintiffs were required to bring all litigation in Pennsylvania:

> The Agreement shall be interpreted under the laws of the Commonwealth of Pennsylvania, without giving effect to its conflict of laws provision.  Any action or litigation of any kind whatsoever in connection with this Agreement shall be adjudicated in a court of competent jurisdiction located in Pennsylvania.  The Lessee hereby consents to the jurisdiction of such courts and to service of process by any means authorized in Pennsylvania or Federal law and hereby waives the right to transfer the venue of any such litigation or action.

20.     As a condition of entering into the Lease Agreements with Defendant Element, Defendant Element required Plaintiffs to enter into Independent Contractor Service Agreements ("ICS Agreements") with Defendant PTL, whereby Plaintiffs subleased the tractors and their driving services to Defendant PTL via ICS Agreements.

21.     As a condition of entering into the Lease Agreements with Defendant Element, Defendant Element required Plaintiffs to allow Defendant PTL to deduct from Plaintiffs' compensation every week to pay Plaintiffs' lease payments, or any other costs accrued by Plaintiffs.

22.     The Lease Agreements between Plaintiffs and Defendant Element require Plaintiffs to drive only for Defendant PTL, or default on their Lease Agreements, subjecting Plaintiffs to an acceleration clause whereby Plaintiffs would be required to pay the entire balance of the lease immediately.

23.    The Lease Agreements between Plaintiffs and Defendant Element restrict Plaintiffs' ability to hire workers to drive the vehicles by requiring Plaintiffs to obtain written approval from Defendant Element in order to do so.

24.    By virtue of the extensive restrictions placed on Plaintiffs' work by the Lease Agreements and ICS Agreements, Defendants Element and PTL retained such control over Plaintiffs that Defendants Element and PTL functioned as Plaintiffs' joint employers.

25.    On or around February 21, 2017, Defendant PNC purchased Defendant Element, becoming a successor in interest to Defendant Element.

26.    Defendants John Doe 1 through John Doe 10 are presently unknown persons who directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices of Defendants, which resulted in Defendants failing to pay Named Plaintiffs and Collective Plaintiffs proper compensation pursuant to the FLSA.

27.    Defendants John Doe 11 through John Doe 20 are presently unknown persons who had control over processing payroll regarding Plaintiffs.

28.    At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

29.    The foregoing paragraphs are incorporated herein as if set forth in their entirety.

30.    Named Plaintiffs bring this action for violations of the FLSA as an individual action and as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all persons who performed work as lease operators and who were designated as "independent contractors" by Defendants at any point during the three years preceding the date the instant action

was initiated (the members of this putative class are hereinafter collectively referred to as "Collective Plaintiffs").

31.    Named Plaintiffs and Collective Plaintiffs are similarly situated, have substantially similar job duties, have substantially similar pay provisions, and are all subject to Defendants' unlawful policies and practices as described herein.

32.    There are numerous similarly situated current and former employees of Defendants who were compensated in violation of the FLSA and who would benefit from the issuance of a Court Supervised Notice of the instant lawsuit and the opportunity to join the present lawsuit.

33.    Similarly situated employees are known to Defendants, are readily identifiable by Defendants, and can be located through Defendants' records.

34.    Therefore, Named Plaintiffs should be permitted to bring this action as a collective action for and on behalf of themselves and those employees similarly situated, pursuant to the "opt-in" provisions of the FLSA, 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

35.    The foregoing paragraphs are incorporated herein as if set forth in their entirety.

36.    Named Plaintiffs bring this action for violations of the TILA, the FFL, and the common law as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who performed work as lease operators or in similar positions who were designated as "independent contractors" by Defendants and who worked in this capacity at any point during the applicable statute of limitations (the members of this putative class are hereinafter collectively referred to as "Class Plaintiffs").

37.    The class is so numerous that the joinder of all class members is impracticable. Named Plaintiffs do not know the exact size of the class, as such information is in the exclusive

control of Defendants; however, on information and belief, the number of potential class members is in the hundreds.

38.    Named Plaintiffs' FFL claims are typical of Class Plaintiffs because Named Plaintiffs and all Class Plaintiffs were subject to similar financial penalties if they attempted to cease working for Defendants.

39.    Named Plaintiffs' TILA claims are typical of the claims of Class Plaintiffs because Named Plaintiffs and all Class Plaintiffs signed substantively similar lease agreements which contained terms and conditions which are unlawful pursuant to the TILA.

40.    Named Plaintiffs' common law claims for unjust enrichment are typical of the claims of Class Plaintiffs because Defendant PTL uniformly utilized illegal liquidated damages provisions to enrich itself and to obtain labor from Named Plaintiffs and Class Plaintiffs at sub-minimum wage levels.

41.    Named Plaintiffs will fairly and adequately protect the interests of the Class Plaintiffs, because Named Plaintiffs' interests are coincident with and not antagonistic to those of the class.  Named Plaintiffs have retained counsel with substantial experience in the prosecution of claims involving employee wage disputes.

42.    No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action.  The class will be easily identifiable from Defendants' records.

43.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Such treatment will allow all similarly situated individuals to prosecute their common claims in a single forum simultaneously.  Prosecution of separate actions by individual members of the putative class would create the risk of inconsistent or varying

adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Defendants. Furthermore, the amount at stake for individual putative class members may not be great enough to enable all of the individual putative class members to maintain separate actions against Defendants.

44.     Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members of the class. Among the questions of law and fact that are common to the class are: (1) whether Defendants misclassified Named Plaintiffs and Class Plaintiffs as independent contractors; (2) whether Defendants coerced Named Plaintiffs and Class Plaintiffs to perform work for Defendants through coercive means whereby Named Plaintiffs and Class Plaintiffs were subject to serious financial harm if they attempted to cease working; (3) whether Defendants paid less than minimum wage to Named Plaintiffs and Class Plaintiffs; (4) whether Defendants violated TILA with respect to the agreements signed by Named Plaintiffs and Class Plaintiffs; and (5) whether Defendants were unjustly enriched by their relationships with Named Plaintiffs and Class Plaintiffs.

## STATUTORY AND REGULATORY FRAMEWORK

45.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

46.     The federal Truth-in-Leasing regulations, 49 C.F.R. Part 376, were developed by the Interstate Commerce Commission out of grave concern for the plight faced by Lease Drivers and Owner Operators within the trucking industry. The regulations govern the leases between motor carriers and independent owner-operators of trucks, and were enacted to create transparency in the terms of the equipment and driver services leases to help combat illegal practices by motor carriers such as skimming from owner-operator compensation. In furtherance of this goal, and with the express intent of alleviating the burden placed on owner-operators by the significant

disparity in bargaining power that largely defines their relationship with motor carriers, the Truth-in-Leasing regulations provide standards of conduct to be incorporated in written leases that govern the contractual relationship between the owner-operator and motor carrier.

47.    To protect owner-operators from abusive business practices by motor carriers, the Truth-in-Leasing regulations prescribe certain terms and conditions that govern these relationships:

a.    "[A]uthorized motor carriers" such as Defendants may perform authorized transportation in equipment that they do not own *only* if the equipment is covered by a written lease meeting the requirements set forth in 49 C.F.R. § 376.12.  *See* 49 C.F.R. § 376.11(a).

b.    The conduct and business practices of authorized motor carriers must comply with the Truth-in-Leasing regulations irrespective of whether their written lease agreements satisfy the requirements of the regulations. 49 C.F.R. § 376.12.

c.    When a driver leases his or her equipment to an authorized motor carrier, the compensation for the equipment and services must be "clearly stated on the face of the lease or in an addendum which is attached to the lease." 49 C.F.R. § 376.12(d).

d.    An owner-operator driver may not be required to purchase any products, equipment or services from the authorized carrier as a condition of entering into the lease.  49 C.F.R. §376.12(i).

e.    An authorized carrier may make deductions from a driver's compensation for items initially paid for by the carrier *only* if those items are clearly specified in

the lease and then *only* if the lease recites how the amount of each deduction is computed.  49 C.F.R. §376.12(h).

f.  The lease must inform the driver that he or she is entitled to copies of those documents which are necessary to determine the validity of the charge.  49 C.F.R. §376.12(h).

g.  Where an owner-operator driver is required to deposit funds with the carrier to cover certain specified costs, such "escrow funds" are monies which belong to the owner-operator drivers.  49 C.F.R. §§376.12(k)(2), (6).

h.  Where escrows are required, the lease must clearly specify how the money can be used and the money can only be used for actual obligations incurred by an individual driver.  49 C.F.R. §§376.12(k)(2), (6).

i.  The carrier must provide periodic accountings to drivers, and, upon termination of the relationship with the carrier, a final accounting reporting all transactions involving the escrow fund. 49 C.F.R. §376.12(k)(3), (4), (6).

j.  The carrier must pay interest to the driver on amounts deposited in escrow on at least a quarterly basis.  49 C.F.R. 376.12(k)(5).

k.  Following termination, all unused escrow funds must be returned to the driver within 45 days from the date of termination.  49 C.F.R. §376.12(k)(6).

l.  By statute, each motor carrier providing transportation of household goods is responsible for all acts or omissions of its agents which relate to the performance of such transportation.  49 U.S.C. § 13907.

m.  An authorized carrier is obligated "to ensure that [owner-operator drivers] receive all of the rights and benefits … under the leasing regulations…"

11

regardless of whether the lease is between the authorized carrier and the driver or between the authorized carrier and its agent.  49 C.F.R. § 376.12(m).

48.    49 U.S.C. § 14704(a)(1) and (2) authorizes owner-operator drivers to bring legal actions for injunctive relief and damages to enforce the federal Truth-in-Leasing regulations.  49 U.S.C. § 14704(e) authorizes an award of attorney's fees to owner-operator drivers in such cases.

## FACTUAL BACKGROUND

49.    The foregoing paragraphs are incorporated herein as if set forth in their entirety.

50.    Named Plaintiff Gale Carter worked for Defendants as a commercial truck driver from in or around October of 2015 to in or around December of 2015.

51.    Named Plaintiff Forbes Hayes worked for Defendants as a commercial truck driver from in or around March of 2016 to in or around June of 2016.

52.    Collective and Class Plaintiffs worked/work for Defendants as commercial truck drivers during the relevant time periods.

53.    At all times relevant, Defendants unlawfully designated Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs as independent contractors.

### Named Plaintiffs, Collective Plaintiffs and Class Plaintiffs Were "Employees" under Federal and State Law

54.    The foregoing paragraphs are incorporated herein as if set forth in their entirety.

55.    Defendant PTL is a motor carrier as defined by the Motor Carrier Act.

56.    Defendant PTL's primary business is to provide transportation of cargo for hire.

57.    Defendant Element is a financial services company that provides vehicle fleet leasing services to Defendant PTL.

58.     Defendant PNC is a financial services company that is a successor to Defendant Element and, upon information and belief, provides vehicle fleet leasing services to Defendant PTL.

59.     Defendant PTL provided to Plaintiffs ICS Agreements, which purport to classify Plaintiffs as independent contractors.

60.     Defendant PTL provided said agreements to Plaintiffs under the guise that Plaintiffs would be participating in Defendants' Lease-Purchase Program.

61.     In order to participate in Defendants' Lease-Purchase program, Defendants required Plaintiffs to execute Lease Agreements with Defendant Element.

62.     As a condition of entering into the Lease Agreements, Plaintiffs were required to maintain ICS Agreements with and work for Defendant PTL to avoid defaulting on the Lease Agreement.

63.     In the event of default, Defendant Element reserved the right to declare the entire balance of lease payments for the remainder of the lease term and the end term value immediately due and payable by way of an acceleration clause in the Lease Agreement, purportedly subjecting Plaintiffs to more than $100,000 in liability.

64.     Additionally, pursuant to the ICS Agreement, Plaintiffs were informed that if they did not "provide[] services when required by PTL on a continuing basis," for at least 9 months, Plaintiffs would be obligated to pay an "early termination fee" of $5,000.

65.     On information and belief, Defendant PTL and Defendant Element entered into joint agreements to administer the Lease-Purchase Program that Plaintiffs participated in, including the deduction of lease and maintenance payments from Plaintiffs' settlement sheets and

the division of such payments between Defendant PTL, Defendant Element and Defendant John Does 1-20.

66.    The ICS Agreements provided to Plaintiffs are similar and/or identical in all material terms.

67.    The Lease Agreements provided to Plaintiffs are similar and/or identical in all material terms.

68.    Defendants controlled and directed Plaintiffs in the performance of their work.

69.    Upon Named Plaintiffs' hiring, Defendant PTL required Named Plaintiffs to attend an orientation, which lasted several days.

70.    During orientation, Defendant PTL required Plaintiffs to take a drug test, take a physical, and watch numerous training videos.

71.    Upon completing orientation, Defendant PTL required Plaintiffs to sign ICS Agreements with Defendant PTL and a Lease Agreement with Defendant Element.

72.    Defendants assigned Plaintiffs a "driver leader/manager," who acted as Plaintiffs' supervisor throughout their employment with Defendants.

73.    Plaintiffs are/were not permitted to use the commercial vehicles leased to them for any carrier other than Defendant PTL.

74.    Plaintiffs are/were not permitted to accept jobs that were assigned to them by any carrier other than Defendant PTL.

75.    During orientation, Defendant PTL instructed Plaintiffs that their employment and lease agreements would be terminated if they accepted work from any carrier other than Defendant PTL.

76.    Throughout their employment, Plaintiffs were not permitted to choose which loads were assigned to them.

77.    Additionally, Plaintiffs were informed that if they failed to provide services as required of them by Defendant PTL, they would be subject to at $5,000 fine.

78.    Plaintiffs had no meaningful opportunity to increase their revenue by recruiting new customers, as they are/were not permitted to recruit new customers as a consequence of being permitted to accept only loads assigned to them by Defendants.

79.    Named Plaintiffs were paid a percentage of received line haul and fuel surcharge revenue on the individual loads assigned to Named Plaintiffs.

80.    Named Plaintiffs were not able to negotiate the rates that were paid to them on loads that were assigned to them by Defendant PTL.

81.    Collective and Class Plaintiffs are/were paid a percentage of received line haul and fuel surcharge revenue and/or a flat per-mile rate based on the individual loads assigned to Collective and Class Plaintiffs.

82.    Collective and Class Plaintiffs were not able to negotiate the rates that were paid to them on loads assigned to them by Defendant PTL.

83.    Plaintiffs can/could do little to increase their profitability other than attempt to work more hours and increase fuel efficiency.

84.    Plaintiffs are/were economically dependent upon Defendants.

85.    At all times, Defendants directed, provided, and supervised the work performed by Plaintiffs on Defendants' behalf.

**Failure to Pay Minimum Wage for all Hours Worked**
**(Named Plaintiffs and Collective Plaintiffs v. Defendants)**

86.    The foregoing paragraphs are incorporated herein as if set forth in their entirety.

87.     Following the completion of Defendant PTL's orientation, Plaintiffs were provided a truck by Defendants and were paid a percentage of received linehaul and fuel surcharge revenue or a flat per-mile rate.

88.     Following Defendant PTL's orientation, Plaintiffs reported their status to Defendant PTL via the on-board computers in their trucks.

89.     Per 29 C.F.R. § 785.22, the maximum amount of time an employer may dock an employee who is on assignment for more than 24 hours for sleeping and meal periods is 8 hours per day.  The remaining amount of time (16 hours per day) is work time and must be paid.

90.     While over-the-road, Named Plaintiffs and Collective Plaintiffs were confined to the general vicinity of their assigned truck for more than 24 consecutive hours.

91.     Furthermore, Plaintiffs were regularly denied at least five hours of uninterrupted sleep each working day, and accordingly should have been paid for all time logged in the sleeper berth when such was the case.

92.     Per the applicable federal minimum wage, Defendants were typically required to compensate Named Plaintiffs and Collective Plaintiffs at least $116 per day ($7.25 x 16 hours).

93.     Nevertheless, Defendants' pay structure and wage deduction practices and policies regularly caused Named Plaintiffs' wages to drop below the federal minimum wage of $7.25 per hour for all hours worked during a workweek.

94.     For example, on May 11, 2016, Named Plaintiff Hayes was issued a statement for work he performed during the workweek of April 20, 2016.  His paystub shows that he completed 3 trips.  Nevertheless, after deductions for Defendants' business expenses, Named Plaintiff Hayes finished the workweek in debt to Defendants and was paid nothing.

95. Similar events happened the following workweek, and despite performing significant work for Defendants during the workweek, Named Plaintiff Hayes was paid nothing, and ended the workweek further in debt, after he was issued a paystub on May 18, 2016 that provided no wages.

96. Upon information and belief, Collective Plaintiffs regularly received less than the federal minimum wage of $7.25 per hour for all hours worked during a workweek.

**Violations of the Truth-in-Leasing Act**
**(Named Plaintiffs and Class Plaintiffs v. Defendants)**

97. The foregoing paragraphs are incorporated herein as if set forth in full.

98. To help facilitate the interstate and intrastate delivery of freight, Defendant PTL enters/entered into substantively similar and/or identical ICS Agreements with Named Plaintiffs and Class Plaintiffs.

99. These ICS Agreements purport to lease, on behalf of Defendant PTL, heavy duty trucks and driving services from Named Plaintiffs and Class Plaintiffs.

100. Upon information and belief, the trucks provided by Plaintiffs are either leased from Defendant Element, Defendant PNC as a successor in interest to Defendant Element, or other truck leasing entities that have entered into agreements with Defendant PTL to lease trucks to individuals participating in Defendant PTL's lease purchase program on terms favorable to Defendant PTL.

101. Under federal law and regulations, "authorized motor carriers" such as Defendant PTL may perform authorized transportation in equipment that they do not own *only* if the equipment is covered by a written lease meeting the requirements set forth in 49 C.F.R. § 376.12. *See* 49 C.F.R. § 376.11(a).

102. The ICS Agreements do not conform to the requirements set forth in 49 C.F.R. § 376.12.

103.    The ICS Agreements do not conform to 49 C.F.R. § 376.12(a) because the Agreements are not signed between the "owner of the equipment" and Defendant PTL.

104.    By way of example only:

a.    Named Plaintiff Carter executed the ICS Agreement with Defendant PTL on October 15, 2015.

b.    Named Plaintiff Carter was not an "owner of the equipment," at the time his Agreement was signed, because Named Plaintiff Carter did not have title to the vehicle, did not have lawful possession of the vehicle, and did not have the right to exclusively use the equipment. *See* 49 C.F.R. § 376.2.

c.    Instead, on October 20, 2015, after the ICS Agreement with Defendant PTL was signed, Named Plaintiff Carter signed a Lease Agreement with Defendant Element.

d.    Said Lease Agreement thus postdated the ICS Agreement in violation of 49 C.F.R. § 376.12(a).

105.    Additionally, the ICS Agreements contain several provisions that violate the Truth-in-Leasing Regulations, as, by way of example only:

a.    Paragraph 4.04 of the Agreements requires Named Plaintiffs and Class Plaintiffs to indemnify Defendant PTL and hold Named Plaintiffs and Class Plaintiffs responsible for various claims, fees, costs and penalties.  These provisions impermissibly seek to limit Defendant PTL's exclusive possession, control and responsibility concerning the operation of the vehicles, in violation of 49 C.F.R. § 376.12(c)(1).

18

b. Paragraph 4.04(a) states that Named Plaintiffs and Class Plaintiffs are responsible for the first $2,500 of any loss relating to any personal injury to a third party or a damage to property resulting from any act or omission of Named Plaintiffs and Class Plaintiffs while under Defendant PTL's dispatch. Said provision further states that Named Plaintiffs and Class Plaintiffs would be responsible for the entirety of the loss in the event that Named Plaintiffs and Class Plaintiffs failed to immediately report the occurrence or the equipment was operated with an unauthorized person present. This limitation of Defendant PTL's liability further limits its exclusive possession, control and responsibility concerning the operation of the vehicles, in violation of 49 C.F.R. § 376.12(c)(1).

c. Paragraph 1.01 of Appendix A of the Agreements authorizes Defendant PTL to reduce Named Plaintiffs' and Class Plaintiffs' compensation by the amounts paid by Defendant PTL to any third parties in relation to movement of loads "without limitation." Said provision is impermissibly vague as it permits Defendant PTL to charge back against Named Plaintiffs and Class Plaintiffs' compensation an undefined amount in violation of 49 C.F.R. § 376.12(h).

d. Paragraph 1.03 of Appendix A includes a non-exhaustive list of "other charges" that may be paid to Named Plaintiffs and Class Plaintiffs by Defendant PTL. Said provision is impermissibly vague as it does not specifically identify the amounts to be paid to Named Plaintiffs and Class Plaintiffs, in violation of 49 C.F.R. § 376.12(d).

e.  Paragraph 4 of Appendix A authorizes Defendant PTL to deduct "any other amount due to PTL" by Named Plaintiffs and Class Plaintiffs pursuant to the Agreement.  Said provision is impermissibly vague as it permits Defendant PTL to charge back against Named Plaintiffs and Class Plaintiffs' compensation an undefined amount in violation of 49 C.F.R. § 376.12(h).

f.  Paragraph 2.05 includes a non-exhaustive list of cost and expenses for which Named Plaintiffs and Class Plaintiffs are responsible.  Said provision does not state with specificity the responsibility of each party with respect to costs incurred via the operation of the equipment, in violation of 49 C.F.R. § 376.12(e), and is impermissibly vague as it permits Defendant PTL to charge back against Named Plaintiffs and Class Plaintiffs' compensation an undefined amount in violation of 49 C.F.R. § 376.12(h).

g.  Paragraph 3.05 states that all settlements are final and Named Plaintiffs and Class Plaintiffs are prohibited from bringing an action against Defendant PTL for additional monies unless Named Plaintiffs and Class Plaintiffs notify Defendant PTL of any discrepancies within 90 days of payment.  Said provision unlawfully sets a time limit for submission by the lessor of required documents, in violation of 49 C.F.R. § 376.12(f).

h.  Paragraph 7.01 authorizes Defendant PTL to set off and deduct from the compensation of Named Plaintiffs and Class Plaintiffs any expenses incurred by Defendant PTL resulting from Named Plaintiffs' and Class Plaintiffs' breach of the Agreement.  Said provision is impermissibly vague as it does not state with specificity all items to be initially paid by Defendant PTL and

subsequently deducted from Named Plaintiffs' and Class Plaintiffs' compensation or the method of computation of same, in violation of 49 C.F.R. § 376.12(h).

106.    Furthermore, the Agreements do not contain certain provisions required by the Truth-in-Leasing Regulations; by way of example only:

    a.   The Agreements do not specify Defendant PTL's obligation to give the Named Plaintiffs and Class Plaintiffs, before or at the time of settlement, a copy of the rated freight bill or a computer-generated document containing the same information, in violation of Defendant PTL's obligation to clearly state same in the Agreements as per 49 C.F.R. § 376.12(g)(1).

    b.   Appendix A, Section II authorizes Defendant PTL to deduct from Named Plaintiffs' and Class Plaintiffs' compensation any rights, remedies, or claims PTL may have upon Plaintiffs' termination but does not sufficiently specify the items that may be charged back against Plaintiffs' compensation pursuant to this provision, in violation of Defendant PTL's obligation to do so as per 49 C.F.R. § 376.12(h).

    c.   Appendix A, Section II authorizes Defendant PTL to deduct unauthorized charges and expenses incurred by Named Plaintiffs and Class Plaintiffs but does not sufficiently specify the items that may be charged back against Plaintiffs' compensation pursuant to this provision or the method of computation of same, in violation of Defendant PTL's obligation to do so as per 49 C.F.R. § 376.12(h).

    d.   Appendix A, Section II authorizes Defendant PTL to deduct "any other amount due" to Defendant PTL by Named Plaintiffs and Class Plaintiffs but does not sufficiently specify the items that may be charged back against Plaintiffs' compensation pursuant to this provision or the method of computation of same, in violation of Defendant PTL's obligation to do so as per 49 C.F.R. § 376.12(h).

107.    The conduct and business practices of authorized motor carriers must also comply with the Truth-in-Leasing regulations irrespective of whether or not their written lease agreements satisfy the requirements of the regulations. *See* 49 C.F.R. § 376.12.

108.    Defendant PTL's conduct does not conform to the requirements set forth in 49 C.F.R. § 376.12, as, by way of example only, Plaintiffs were required to purchase insurance, satellite communication equipment and legal and maintenance services from Defendants, in violation of 49 C.F.R. § 376.12(f).

109.    As a result of Defendant PTL's violations of 49 C.F.R. § 376.12(d) and (h), Named Plaintiffs and Class Plaintiffs were disadvantaged by a lack of transparency in their contractual relationship with Defendant PTL, resulting in damages.

110.    The above violations are mere examples of the written lease violating substantial provisions of the TILA. Moreover, many of the violations stated herein violate multiple sections of the TILA even where only one specific section is cited.

**Defendants' Violations of the Federal Forced Labor Statute**
**(Named Plaintiffs and Class Plaintiffs v. Defendants)**

111.    The foregoing paragraphs are incorporated herein as if set forth in full.

112.    Defendants force Plaintiffs to labor for them for long periods of time, under terms that employees would never be bound to follow.

113.    Defendants also benefit financially from knowingly participating in the scheme outlined herein.

114.    The Lease Agreements state that, among other things, that if Plaintiffs cease working for Defendant PTL, that Defendant Element may declare the "entire balance of the lease payments for the remainder of the Lease Term and the End of Term value . . . immediately due and payable by acceleration and recover such amounts as liquidated damages…"

115.    The ICS Agreements state that, among other things, if Plaintiffs do not "provide[] services when required by PTL on a continuing basis," for at least 9 months, Plaintiffs would be obligated to pay an "early termination fee" of $5,000.

116.    Even though Plaintiffs are tied to working for Defendants for a long period of time, Defendants have the ability to terminate the contract by failing to provide assignments to Plaintiffs. Defendant PTL is not contractually obligated to provide assignments to Plaintiffs, and if Plaintiffs do not receive assignments from Defendant PTL (Plaintiffs' sole source of revenue), deductions for lease payments are not be made, resulting in a default of the Lease Agreement.  In such a default, all payments remaining on the lease become immediately due (subjecting Plaintiffs to potentially more than $100,000 in debt), and Defendant Element may repossess the truck.  Such repossession further would leave Plaintiffs in default of the ICS Agreement, allowing Defendant PTL to terminate the lease and potentially obtain an additional $5,000 in liquidated damages.

117.    Defendants' ability to put Plaintiffs in default of the Lease Agreement at any time provides Defendants with further means to maintain exclusive control over the lease operators' work, and forces lease operators to accept work at sub-minimum wage levels.

118.    Plaintiffs are unable to terminate the ICS Agreement because doing so would leave them in immediate default of the Lease Agreement, resulting in the same severe financial penalties as if Defendants had terminated the ICS Agreement.

119.    Defendants' scheme is designed to force the continued labor of Plaintiffs by using threats of serious financial harm through explicit threats to impose, enforce, and collect significant debts.

**COUNT I**
**Violations of the Fair Labor Standards Act ("FLSA")**
**(Failure to Pay Minimum Wage)**
**Named Plaintiffs and Collective Plaintiffs v. Defendants**

120.    The foregoing paragraphs are incorporated herein as if set forth in full.

121.    At all times relevant herein, Defendants were and continue to be "employers" within the meaning of the FLSA.

122.    At all times relevant herein, Named Plaintiffs and Collective Plaintiffs were/are "employees" within the meaning of the FLSA.

123.    The FLSA requires employers, such as Defendants, to minimally compensate employees, such as Named Plaintiff and Collective Plaintiffs, at the federal minimum wage rate for each hour worked.

124.    As a result of Defendants' company-wide practices and policies of not paying its employees at least the federally mandated minimum wage for all hours worked, Named Plaintiffs and Collective Plaintiffs have been harmed.

125.    John Does 1-10 are jointly and individually liable for Defendants' failure to compensate Named Plaintiffs and Collective Plaintiffs at least the statutorily mandated federal minimum wage for all hours worked because they directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices which violated the FLSA.

126.    John Does 11-20 are jointly and individually liable for Defendants' failure to compensate Named Plaintiff and Collective Plaintiffs at least the statutorily mandated federal minimum wage for all hours worked because they had control over processing payroll for Named Plaintiffs and Collective Plaintiffs.

127.    Defendants willfully failed/fail to compensate Named Plaintiffs and Collective Plaintiffs the federal minimum wage.

128.    As a result of Defendants' failure to compensate Named Plaintiffs and Collective Plaintiffs at the federal minimum wage rate, Defendants have violated and continue to violate the FLSA.

**COUNT II**
**<u>Violations of the Truth in Leasing Act</u>**
**Named Plaintiffs and Class Plaintiffs v. Defendant PTL**

129.    The foregoing paragraphs are incorporated herein as if set forth in full.

130.    The ICS Agreements provided to Named Plaintiffs and Class Plaintiffs violate numerous provisions of the Truth in Leasing Act.

131.    As a result of Defendant PTL's conduct, Named Plaintiffs and Class Plaintiffs have suffered damages.

**COUNT III**
**<u>Violations of the Federal Forced Labor Statute</u>**
**Named Plaintiffs and Class Plaintiffs v. Defendants**

132.    The foregoing paragraphs are incorporated herein as if set forth in full.

133.    Defendants obtained the continuous labor of Plaintiffs by using threats of serious harm.

134.    Defendants operated a scheme, plan or pattern intended to cause Plaintiffs to believe that non-performance of labor would result in serious financial and professional harm.

135.    Defendants' conduct violation the federal forced labor statutes, 18 U.S.C. §§ 1589 and 1595.

**COUNT IV**
**Violations of the Common Law**
**Unjust Enrichment**
**Named Plaintiffs and Class Plaintiffs v. Defendants**

136.    The foregoing paragraphs are incorporated herein as if set forth in full.

137.    Defendants were unjustly enriched by enforcing unlawful liquidated damages provision in contracts to enrichen Defendants financially and to obtain labor from Plaintiffs at sub-market rates.

138.    As a result of Defendants' conduct, Named Plaintiffs and Class Plaintiffs have suffered damages.

**WHEREFORE**, Plaintiffs pray that this Court enter an Order providing that:

(1)    Defendants are to be prohibited from continuing to maintain their policies, practices or customs in violation of federal law, state laws and principles of equity;

(2)    Defendants are to compensate, reimburse, and make Named Plaintiffs, Collective and Class Plaintiffs whole for any and all pay and benefits they would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings.  Named Plaintiffs, Collective and Class Plaintiffs should be accorded those benefits illegally withheld;

(3)    Named Plaintiffs, Collective and Class Plaintiffs are to be awarded liquidated, statutory and/or punitive damages as applicable under the laws they are suing;

(4)    Named Plaintiffs, Collective, and Class Plaintiffs are to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable law;

(5)    Named Plaintiffs, Collective, and Class Plaintiffs are to be awarded equitable relief, including disgorgement of profits and other relief deemed appropriate by the Court;

(6)    Any and all other equitable relief which this Court deems fit; and

(7)    A trial by jury.

          Respectfully Submitted,

          */s Justin L. Swidler*
          Justin L. Swidler, Esq.
          Joshua S. Boyette, Esq.
          Travis Martindale-Jarvis, Esq.
          Manali Arora, Esq.
          **SWARTZ SWIDLER, LLC**
          1101 Kings Highway North, Suite 402
          Cherry Hill, NJ 08034
          Phone: (856) 685-7420
          Fax: (856) 685-7417

Date: October 11, 2017

## DEMAND TO PRESERVE EVIDENCE

All Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Named Plaintiffs', Collective Plaintiffs, and Class Plaintiffs' employment and/or contractual relationship with Defendant, to Named Plaintiffs', Collective Plaintiffs, and Class Plaintiffs' cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, Defendant's marketing materials (including its website), orientation materials, complaints made by any driver regarding pay, closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, Qualcomm messages, driver logs, spreadsheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

Respectfully Submitted,

/s Justin L. Swidler
Justin L. Swidler, Esq.
Joshua S. Boyette, Esq.
Travis Martindale-Jarvis, Esq.
Manali Arora, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Highway North, Suite 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420
Fax: (856) 685-7417

Date: October 11, 2017