UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:18-CV-041-TBR

GALE CARTER, *et al.*  PLAINTIFFS

v.

PASCHALL TRUCK LINES, INC., *et al.*  DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Plaintiffs Gale Carter and Forbes Hays's ("Plaintiffs") Motion for Conditional Certification of FLSA Collective Action. [R. 101.] Defendant Paschall Truck Lines, Inc. ("PTL") responded, [R. 144], and Plaintiffs replied, [R. 155]. For the reasons stated herein, Plaintiffs' Motion for Conditional Certification of FLSA Collective Action, [R. 101], is **GRANTED**

Also before the Court is PTL's Motion for Leave to File a Surreply. [R. 156.] Plaintiffs did not respond. The Court grants Plaintiffs' motion to a file a surreply and has considered Plaintiffs' surreply in forming this opinion.

**BACKGROUND**

Plaintiffs bring this action for unpaid wages pursuant to the Fair Labor Standards Act (FLSA), challenging the Defendants' policy and practice of classifying workers as independent contractors. Paschall Truck Lines, Inc. ("PTL") is a for-hire motor carrier that provides trucking services for shipping across the continental United States. [R. 100 at 6; R. 144 at 6.]  It employs both "company drivers," or employees, and contracts with independent contractors to deliver loads. [*Id.*] Plaintiffs were employed as independent contractors by PTL. [R. 101-2 at 86 (Carter Declaration), 92 (Hays Declaration), 97 (Harris Declaration).]

1

Plaintiffs allege that they, and the putative class members, were misclassified as independent contractors by PTL and, due to PTL's pay structure and wage deduction practices, Plaintiffs' wages regularly fell below the federal minimum wage rate in violation of the Federal Labor Standards Act ("FLSA"). [R. 103 at 27; R. 100 at 18.] Plaintiffs assert that they are similarly situated with the putative class members in terms of job duties and classification status, they all are (or were) subject to the same or similar pay structure, and they all worked similar hours. Plaintiffs originally sought conditional certification of this action as an FLSA collective action with the proposed FLSA class to be defined as: "all Lease Drivers who drove for Defendant PTL at any point in the three years prior to October 12, 2017 (the date of the filing of the initial complaint in this matter) through the present." [R. 100 at 22.] Then, in their Reply, Plaintiffs further defined the class as "any driver who signed an ICSA[1] with Defendant PTL and who also had an agreement whereby Defendant would remit truck lease payments to a lease vendor." [R. 155 at 3.] Plaintiffs also request that the Court facilitate notice to the putative class members. Specifically, the Plaintiffs request that, if the Court conditionally certifies the class, the Court "order the parties to, within two weeks of the court's order conditionally certifying this matter, provide the Court either (1) an agreed-upon notice; or (2) a proposed notice from Named Plaintiffs should the Parties not be able to reach an agreement (followed by PTL responding to said notice with its objections)." [R. 100 at 29.]

In support of their motion, Plaintiffs submitted declarations, [R. 101-2 at 86-100], as well as many exhibits, including the independent contractor and lease agreements signed by Carter and Hays, [R. 101-2 at 2-75], Carter's "settlement sheets" from PTL, [R. 101-2 at 78, 84], and debt collection notices sent to Hays and Carter from PTL, [R. 101-5 at 31, 34]. Carter and Harris

---

[1] Plaintiffs aver that they were required to sign an Independent Contractor Service Agreement ("ICSA") as a condition for working as a "Lease Driver" for PTL. [R. 101-2 at 86, 92, 97.]

state in their declarations that, while employed by PTL, they spent "at least five, and often seven days over-the-road hauling freight . . . exclusively for PTL," and spent "approximately two to three weeks at a time over-the-road and under dispatch (i.e. working) for PTL." [R. 101-2 at 88, 99.] Hays states: "At all times during my employment with PTL, I spent at least five, and often seven days over-the-road hauling freight . . . exclusively for PTL." [R. 101-2 at 94.] All three Plaintiffs stated in their declarations that throughout their employment with PTL: "I was required to haul freight exclusively for PTL;" "PTL required me to attend an Orientation Program;" one of their job duties was "communicating my location, activities, estimated time of arrival, and projected time of availability to PTL via the Qualcomm computer system on my truck and other means;" each was assigned a "fleet manager" by PTL who "sent me load assignments and coordinated my work with PTL;" they each "received my load assignments via the Qualcomm unit on my truck, along with the pick-up location, pick-up time, drop-off location, drop-off time, my route and the approximate amount I would be paid for the load;" and they were not permitted to negotiate the rate paid by PTL customers for the freight each hauled. [R. 101-2 87-89, 92-94, 97-100.]

Also, Carter and Harris both stated that they ceased working for PTL after they received multiple settlement statements showing that they made $0 in compensation for full weeks working exclusively for PTL and were in fact indebted to PTL due to operating costs. [R. 101-2 at 88, 99.][2] All three plaintiffs stated that they owed PTL at least $7,000.00 in expenses after ceasing employment there. [R. 101-2 at 89, 94, 100.][3] Furthermore, all three plaintiffs averred: "It is my understanding that the other Lease Drivers who were employed by PTL were subject to

---

[2] In fact, Carter submitted two settlement sheets from PTL showing "Unit Total Pay" as 0.00. [R. 101-2 at 78, 84.]
[3] Both Carter and Hays submitted debt collection notices from PTL for amounts due of $7,312.54 and $7,969.48, respectfully. [R. 101-5 at 31, 34.]

the same policies and practices regarding their job duties and responsibilities, their pay, deductions from their pay[.]" [R. 101-2 at 89, 94, 100.]

## LEGAL STANDARD

The FLSA provides that an employee may bring a claim "for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). A collective action under the FLSA permits similarly situated employees to opt in to the action, unlike the opt-out approach typically utilized under Federal Rule of Civil Procedure 23. An opt-in action under § 216(b) prohibits any person from becoming a party plaintiff in the collective action unless he or she files a written consent with the Court; therefore, these similarly situated employees must be notified of the lawsuit. *Comer v. Wal–Mart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir. 2006).

The Sixth Circuit utilizes a two-step approach for the certification of collective actions under the FLSA. *Id.* The first stage,[4] "conditional certification," occurs at the beginning of discovery. At this stage, the Court must determine whether notice of the pending action and the opportunity to opt in should be given to potential class members. *See Jones–Turner v. Yellow Enter. Sys., LLC,* 2007 WL 3145980, at *1 (W.D. Ky. Oct. 25, 2007); *Crawford v. Lexington–Fayette Urban Cnty. Gov't,* 2007 WL 293865, at *5 (E.D. Ky. Jan. 26, 2007). The certification at this stage "is conditional and by no means final." *Comer,* 454 F.3d at 546.

A plaintiff seeking to certify a collective action bears the burden of establishing that he and the proposed class he seeks to represent are similarly situated. *See Jones–Turner,* 2007 WL 3145980, at *1. The FLSA provides no guidance as to the meaning of the term "similarly situated," and, as another Court in this circuit has observed, "the Sixth Circuit has declined 'to create comprehensive criteria for informing the similarly-situated analysis.'" *Bernal v.*

---

[4] The second stage occurs later in the litigation after all opt-in forms have been received and discovery has concluded. *See Comer,* 454 F.3d at 547.

*TrueBlue, Inc.,* 2010 WL 1996922, at *2 (W.D. Mich. May 19, 2010) (quoting *O'Brien v. Ed Donnelly Enters., Inc.,* 575 F.3d 567, 585 (6th Cir. 2009)). Regardless, because conditional certification decisions generally are made prior to discovery, a plaintiff's evidentiary burden is not a heavy one. "Generally speaking, at the first stage of conditional certification, courts require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Jones–Turner,* 2007 WL 3145980, at *2 (citation omitted). Thus, the named plaintiff need merely provide a modest factual showing to demonstrate that he is similarly situated to the putative class members. *Id.* (citing *Comer,* 454 F.3d at 547). "[T]he court's review of this modest showing is made using a fairly lenient standard, which 'typically results in conditional certification of a representative class." *Crawford,* 2007 WL 293865, at *5 (internal quotation marks omitted) (quoting *Comer,* 454 F.3d at 547).

## DISCUSSION

### A. Conditional Certification

PTL argues that Plaintiffs have not established that they are similarly situated to other potential plaintiffs. Upon reviewing Plaintiffs' motion and attached declarations and exhibits, the Court is satisfied that Plaintiffs have met their burden and made the modest factual showing required for conditional certification of a collective action. Those materials, read together, sufficiently show some factual nexus that binds Plaintiffs and the putative class members together as victims of a particular alleged policy or action. At the second stage, following discovery, the Court will examine more closely the question of whether the particular members of the class are, in fact, similarly situated. *See Comer,* 454 F.3d at 547.

PTL presents a compelling argument as to whether Plaintiffs were PTL's employees, as they allege, or instead independent contractors. Specifically, PTL examines the factual details surrounding all six factors of the economic realities test used by the Sixth Circuit to determine whether a business has misclassified an employee as an independent contractor. [R. 144 at 23-28.] However, a rigorous inquiry into the merits of Plaintiff's claims is not necessary at this early juncture. *See, e.g., Shipes v. Amurcon Corp.,* 2012 WL 995362, at *5 (E.D. Mich. Mar. 23, 2013) ("At this first stage, courts do not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations."); *Fisher v. Mich. Bell Tel. Co.,* 665 F. Supp. 2d 819, 825 (E.D. Mich. 2009) (same); *accord Dominguez v. Don Pedro Rest.,* 2007 WL 271567, at *2 (N.D. Ind. Jan. 25, 2007) (noting that at the conditional certification stage, "the court accepts as true the plaintiff's allegations and does not reach the merits of the plaintiff's FLSA claims").

PTL also argues that Plaintiffs have not met their burden regarding their minimum wage claims because "Plaintiffs' theory requires a contractor-by-contractor, workweek-by-workweek analysis of driver hours worked, and the net amount paid (after analyzing each deduction to determine whether it is properly credited to the total settlement that workweek)." [R. 144 at 21.] However, once again, a rigorous inquiry into these factual differences or the possible differences in damages claims is not necessary at the conditional certification stage. *See Burgess v. Wesley Fin. Grp., LLC,* No. 3:16-CV-1655, 2017 WL 1021294, at *4 (M.D. Tenn. Mar. 16, 2017) ("At this stage, the court does not determine whether all potential class members are similarly situated with respect to the damages that they might pursue.").

Lastly, PTL makes the astute observation that Plaintiffs' class definition seems to cast a wide net for potential class members:

> Plaintiffs have captured far more than drivers who, like Plaintiffs, went to Indianapolis to pick out tractors from Quality that they leased from Element

> ("Element Lease Drivers"). Instead, Plaintiff's definition includes Contractors who own their own tractors, Contractors who own multiple tractors, and Contractors with leases that differ from the Element Leases.

[R. 144 at 16.] PTL argues that these contractors are not unified by "a common theory of PTL's alleged statutory violations" due to "(1) Plaintiffs' individual FLSA claims turn on the specific terms of their Element Leases, and (2) Plaintiffs have offered no evidence that the other Contractors signed any lease at all, let alone a similar lease to the Element Leases they signed." [*Id.*] Plaintiffs respond that "PTL provides the same independent contractor agreements to Quality Lease Drivers as other Contract Drivers who drive for PTL, thereby creating a strong factual similarity between Quality Lease Drivers and other Lease Drivers and warranting notifying all Lease Drivers of this lawsuit and their opportunity to join." [R. 155 at 4.][5] As the Plaintiffs explicitly define the class in their Reply to include drivers who "had an agreement whereby Defendant would remit truck lease payments to a lease vendor," the Court finds that the class should not include those drivers who own their trucks, rather it should be limited to drivers that lease their trucks. Also, the Court finds that Plaintiffs have provided enough evidence of similarities between drivers that signed a lease agreement, including job duties, hours worked, other pay deductions, to satisfy the modest factual showing required at the conditional certification stage. *See, e.g., Archer v. Nabors Truck Serv., Inc.*, No. 16-CV-02610-JTF-TMP, 2018 WL 6574796, at *5 (W.D. Tenn. Oct. 12, 2018) ("[T]his court is bound by Sixth Circuit law, and district courts applying the law of this circuit have granted plaintiffs' motions for conditional certification where those plaintiffs supported their motions only with complaints and supporting declarations."). Thus, the class need not be narrowed to solely those drivers that signed the same Element lease agreement at this time.

---

[5] Quality Equipment Leasing, LLC ("Quality") facilitates lease financing for trucks for PTL. [*See* R. 102-2 at 87, 93, 98; R. 144 at 9.]

B.  **Proposed Class Period**

Plaintiffs contend that the class period should encompass drivers "who drove for Defendant PTL at any point in the three years prior to October 12, 2017 (the date of the filing of the initial complaint in this matter) through the present." [R. 100 at 22.][6] In response, PTL cites 29 U.S.C. § 255(a) and § 256 for the contention that the statute of limitations is, at most, three years, and "it continues to run until the opt-in plaintiffs affirmatively file consents." [R. 144 at 28.] From there, PTL arrives at the conclusion that if the Court grants Plaintiffs' motion, "it should only require notice to be sent to putative opt-in plaintiffs who performed services within the three years preceding *the date of the Court's order conditionally certifying the action*." [*Id.* (emphasis added).] The Court is not certain as to how Plaintiffs reached this conclusion. Furthermore, Plaintiffs cite to no case law in support or aid of an explanation.

> Under the FLSA, any action
>
> to enforce any cause of action for unpaid minimum wages . . . may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless *commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.*

29 U.S.C. § 255(a) (emphasis added). In other words, an employee "may recover for unpaid wages for up to [two] years"—or, if the employer's "violation of the [FLSA] is found to be willful," for up to three years—immediately "prior to the filing of the action." *Gandy v. Sullivan Cty.*, 24 F.3d 861, 863 (6th Cir. 1994) (citing 29 U.S.C. § 255(a); *Anderson v. City of Bristol*, 6 F.3d 1168, 1174 (6th Cir. 1993); *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 842 (3d Cir. 1992)). For purposes of the statute of limitations, "the filing of the written consent 'commences'

---

[6] Plaintiffs later cited to a case from the Eastern District of Michigan in their Reply in support of their contention that the class period should consist of drivers who worked from October 12, 2014 to the present. [R. 155 at 14 (citing *Mathews v. ALC Partner, Inc.*, No. 2:08-CV-10636, 2009 WL 2591497, at *8 (E.D. Mich. Aug. 24, 2009), *modified*, No. 08-CV-10636, 2009 WL 10680524 (E.D. Mich. Oct. 27, 2009)).]

an FLSA collective action" for that particular claimant. *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 675 (6th Cir. 2012) (citing 29 U.S.C. § 256). The Court finds that the most prudent approach at this early stage is to afford notice to a broader range of possible class members so that the Court may, as appropriate, entertain subsequent motions for equitable tolling. *See Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1078 (S.D. Ohio 2016); *see also Truitt v. Cty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998) (instructing district courts to evaluate equitable tolling on a "case-by-case" basis). Thus, the Court rejects Plaintiffs proposal, and finds that the class period should span from October 12, 2014 to the present.

    C.  Class Counsel

    Plaintiffs request that the Court appoint Swartz Swidler, LLC as class counsel. [R. 102.] PTL did not object. As this is a motion for conditional certification, i.e., the class has not yet been certified, the Court interprets Plaintiffs' request as one to appoint interim counsel. The appointment of interim class counsel is governed by Federal Rule of Civil Procedure 23(g)(3). Courts routinely use the factors in Rule 23(g)(1) when appointing interim class counsel prior to class certification. "When one applicant seeks appointment as class counsel," as is the case here, "the court may appoint the applicant only if the applicant is adequate under Rule 23(g)(1) and (4)." Fed. R .Civ. P. 23(g)(2). Rule 23(g)(4) simply requires that class counsel fairly adequate and adequately represent the interests of the class. Upon reviewing Plaintiffs' motion and the exhibits thereto, the Court is satisfied that these firms satisfy the requirements of Rule 23(g) and will GRANT Plaintiff's request and appoint Swartz Swidler, LLC as interim class counsel. *See Ross v. Jack Rabbit Servs., LLC*, No. 3:14-CV-00044-TBR, 2014 WL 2219236, at *5 (W.D. Ky. May 29, 2014); *Conklin v. 1-800 Flowers.com, Inc.*, No. 2:16-CV-675, 2017 WL 3437564, at *6-7 (S.D. Ohio Aug. 10, 2017).

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

(1) PTL's Motion for Leave to File a Surreply, [R. 156], is **GRANTED**;

(2) Plaintiffs' Motion for Conditional Certification of FLSA Collective Action, [R. 101], is **GRANTED**. The proposed collective FLSA class is **CONDITIONALLY CERTIFIED** as any driver who drove for Defendant Paschall Truck Lines, Inc. (PTL) from October 12, 2014 through the present, signed an Independent Contractor Service Agreement with Defendant PTL, and had an agreement whereby Defendant PTL would remit truck lease payments to a lease vendor;

(3) Swartz Swidler, LLC is appointed interim class counsel;

(4) the Parties shall meet and confer within 14 days of this Order, and provide the Court either (1) an agreed-upon notice; or (2) a proposed notice from Plaintiff should the Parties not be able to reach an agreement; and

(5) Plaintiffs' Motion for Leave to Seal Documents, [R. 157], is **GRANTED**.

**IT IS SO ORDERED**.

**Thomas B. Russell, Senior Judge**
**United States District Court**

April 10, 2019

cc: Counsel of Record