UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

| | |
|---|---|
| GALE CARTER and FORBES HAYS,<br>*On behalf of themselves and those similarly situated*, | Plaintiffs, |
| v. | No. 5:18-cv-00041-BJB-LLK |
| PASCHALL TRUCK LINES, INC., et al. | Defendants. |

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

A year ago the parties proposed and this Court accepted an agreed process for handling truck drivers' late-filed consent forms in this FLSA collective action. Both sides now ignore that process and ask the Court to either accept or reject, en masse, the opt-in forms of 110 potential plaintiffs. At least based on the papers, the parties do so without even attempting to apply their own agreement to the current situation, leaving the Court to sift through the record, or the equities, or the caselaw to reach a decision.

That approach would disserve the interests of judicial economy as well as the interests of existing and potential parties to this lawsuit. The Court therefore reserves ruling on the pending motion to strike the late-filed consent forms (DN 198), orders the parties to confer regarding the proper application of their 2019 agreement to the 110 late-filed consents (DN 166), and file a joint report with the Court within 30 days.

**BACKGROUND**

Plaintiffs Gale Carter and Forbes Hayes previously drove trucks for Defendant Paschall Truck Lines, Inc., also known as PTL. Co-defendant Element Fleet Management Corp. and other outfits leased tractor trailers to the Plaintiffs. But those lease arrangements allegedly required the Plaintiffs to enter into Independent Contractor Service Agreements with PTL, restricted the Plaintiffs' ability to drive for companies besides PTL, allowed PTL to deduct lease payments and costs from the Plaintiffs' compensation, and restricted the Plaintiffs' ability to hire others to drive their leased vehicle. Second Amended Complaint [DN 103] at 1754–55, 1758–59.

Plaintiffs claim that these extensive restrictions made PTL their employer under the Fair Labor Standards Act, yet PTL did not pay them in accordance with the requirements the Act imposes on employers. *Id.* at 1759, 1768–70.[1] Plaintiffs filed a motion for conditional certification

---

[1] The Second Amended Complaint also alleges unjust enrichment and violations of the Fair Labor Standards Act, Truth in Leasing Act, and Federal Forced Labor Statute. DN 103 at 1752. Some of these claims give

1

of an FLSA "collective action," which the Court granted in April 2019. DN 161. Shortly thereafter, the Court entered an agreed order approving a process for notifying other potential "similarly situated" plaintiffs regarding how to opt into this collective action. DN 166; 29 U.S.C. § 216(b). That agreed order established that the opt-in period would be 90 days, starting from the day the FLSA notice was mailed or emailed, whichever was earlier. DN 166 at 3640.

The parties recognized that some drivers might need additional time to return the consent form: if the initial notice by mail proved undeliverable, PTL agreed to provide social security numbers so a third-party administer could locate an updated address and send a second notice. Any such "undeliverable opt-in plaintiff" would have 45 days from the second mailing or 30 days after the opt-in period ended (whichever was later) in which to "return and file their consent form with the Court." *Id.* at 3640–41.

The notice period ran from July 12 to October 10, 2019. DN 198-1 at 5520–21. The Plaintiffs' counsel filed several batches of consent forms in September and October, before the period closed. DNs 185–86. And on October 11 and 14, plaintiffs' counsel filed 11 additional consent forms, apparently without objection to their timeliness. DNs 188–89; Mot. to Strike [DN 198] at 5521 n.1. At the conclusion of the notice period, the Plaintiffs' counsel had filed with the Court consent forms for approximately 959 plaintiffs who opted into the conditionally certified FLSA class.

Roughly two weeks later, in October 2019, the parties asked the Court to stay the case for mediation, and the Court obliged. DN 191. After that mediation failed in August 2020, the Chief Judge reassigned this case to a new judge in December and the Court lifted the stay in January.

This motion concerns the status of would-be plaintiffs whose consent forms counsel filed in August and November 2020, well after the 90-day notice period ended. Before the Court lifted the stay, Plaintiffs filed 64 consent forms from drivers seeking to join the conditional class. DN 197. PTL moved to strike the consents because the parties had agreed to cap the class as of October 2019. DNs 198, 206. Plaintiffs then filed 46 more consent forms. DNs 204–05. These, counsel asserts, arrived during the opt-in period but weren't filed with the Court. PTL objected to these consents as well.

Now that the Court has lifted the stay, the question is whether these additional 110 putative plaintiffs may join the existing FLSA collective action—or must instead file their own collective (or individual) lawsuit.

## DISCUSSION

Congress did not mandate or specify consent deadlines in the FLSA. *See Lykins v. First Acceptance Corp.*, No. 3:13-cv-01374, 2015 WL 2367155, at *1 (M.D. Tenn. May 18, 2015) (the FLSA "does not specify when the potential plaintiff must opt-in," so courts consequently establish consent deadlines). Indeed, aside from the statute of limitations—which the parties address only

---

rise to separate class action allegations and briefing under Federal Rule of Civil Procedure 23—a process distinct from the FLSA collective action at issue in this motion.

glancingly—the FLSA does not address the timeliness of opt-in claims at all. The relevant portion of the statute, 29 U.S.C. § 216(b) (emphasis added), simply provides that:

> An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves *and other employees similarly situated*. No employee shall be a party plaintiff to any such action *unless he gives his consent in writing* to become such a party *and such consent is filed in the court* in which such action is brought.

In order to facilitate the efficient management of FLSA cases, however, trial courts regularly and sensibly impose deadlines by which plaintiffs must consent to a putative collective action. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 172 (1989). The trial court may, in its discretion, authorize notification of similarly situated employees to allow them to opt-in to the collective action. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 545 (6th Cir. 2006). And, because "[t]he FLSA 'does not provide a standard under which a court should consider'" tardy consent, the trial court may, in its discretion, decide "whether to include opt-in plaintiffs whose consent forms are filed after the court-imposed deadline has passed.'" *Adams v. Nature's Expressions Landscaping Inc.*, No. 5:16-cv-98-JMH, 2017 WL 4844560, at \*4 (E.D. Ky. Oct. 25, 2017) (quoting *Heaps v. Safelite Sols., LLC*, No. 2:1-cv-729, 2011 WL 6749053, at \*1 (S.D. Ohio Dec. 22, 2011).

Trial courts within the Sixth Circuit have exercised that discretionary authority by examining five non-dispositive factors:

(1) whether good cause exists for the late submissions,
(2) prejudice to the defendant,
(3) how long after the deadline passed the consent forms were filed,
(4) judicial economy, and
(5) the remedial purposes of the FLSA.

*Adams*, 2017 WL 4844560, at \*4; *Lykins*, 2015 WL 2367155, at \*1.

Each side accepts this rubric and contends—zealously—that these factors cut in its direction. PTL emphasizes that Plaintiffs never informed PTL of the late consents, never conferred before making the filings, never sought leave for blowing the deadline, never provided an excuse for waiting 10 months to file, and never mentioned the additional opt-ins during mediation. This delay, PTL urges, highlights the filings' prejudice: discovery is well underway, nearly a year passed since the deadline and stay, signatures on several consents were dated more than a month after the cutoff, and the statute of limitations precludes (we are told, without evidence) 101 of 110 underlying claims. To the extent these claims are not already time-barred, PTL insists that enforcing the deadline will not undermine the FLSA's remedial purpose: the late plaintiffs may seek relief in separate actions or one collective action.

3

Plaintiffs, for their part, ask what possible prejudice PTL would suffer from the filing of consents while a year-long stay remained in effect during a pandemic? The delay, in their view, did not implicate any (other) deadlines, interrupt formal discovery, or trigger any provision of law that prevents plaintiffs from filing out of time. The putative plaintiffs are over-the-road truckers who spend weeks away from home, and some allegedly lacked prompt notice because PTL provided incorrect or tardy address information. PTL even concedes, according to Plaintiffs' brief, that judicial economy and the statute's remedial purpose cut in Plaintiffs' favor.

So we confront an apparent stalemate: little-to-no good cause (factor 1) negating little-to-no obvious prejudice (factor 2). The number of late opt-ins looks large in absolute terms (110 additional plaintiffs) but manageable relative to the size of the existing class (~10%). The delay (factor 3) seems lengthy relative to the consent cutoff, but not so lengthy when accounting for the stay. And either side's proposed course may conceivably serve Congress' remedial purposes (factor 5): either by expanding this case or filing a new individual (or collective) action. The precedents cited—none from the Sixth Circuit, none substantially constraining the management of this case—leave ample room for the Court, in its sound discretion, either to allow (as in *Adams*) or to exclude (as in *Lykins*) the additional 110 opt-ins.

What about factor 4—judicial economy? That consideration brings us back where we arguably should've started: with the parties' own agreement regarding how they would handle late-arriving consents. Both sides emphasize the *Court's* cutoff and the *Court's* discretion. Yet this is an issue that counsel should have been able to resolve, or at least substantially narrow, without the Court's involvement. Presumably the familiar benefits of rules and deadlines—certainty, intelligibility, and efficiency—largely explain why the parties already agreed—in advance—what they would do in a situation like this. The agreed order, DN 166 at 3640–41, specifies that:

> f. The FLSA notice SHALL be sent to putative opt-in plaintiffs via first-class mail and email with a 90-day period in which the putative opt-in plaintiffs can return and file their consent forms with the Court, starting from the day the FLSA notice is mailed or emailed (whichever is earlier).
>
> g. In the event the first-class mail is returned undeliverable, Defendant PTL is ORDERED to provide to the third-party administrator the putative opt-in plaintiff's social security number so that the third-party administrator may locate an updated address and re-mail the FLSA notice. The deadline for each undeliverable opt-in plaintiff to return and file their consent form with the Court shall be the earlier of (a) 45-days from the date the second mailing is made; or (b) 30 days after the 90-day notice period expires. This deadline shall be reflected in the notices to be mailed to undeliverable collective action members.

That agreement was sufficiently sensible and important that the parties presented it to the then-presiding judge for entry as a court order. And that agreed order presumptively dictates the outcome here. The interests of judicial economy strongly support the enforcement of court orders,

particularly ones that determine the metes and bounds of a complex collective action. "The Court's orders are not suggestions. They are not guidelines. They are orders that must be followed. Parties cannot disobey court orders without consequence." *Williams v. PBI Bank*, No 3:13-cv-1166-DJH-CHL, 2017 U.S. Dist. Lexis 217762, at *27 (W. D. Ky. Mar. 1, 2017). Enforcing a plan endorsed by Plaintiffs, PTL, and the Court certainly serves the twin goals of "avoiding a multiplicity of duplicative suits" and "expedit[ing] disposition of the action." *Hoffmann-La Roche,* 493 U.S. at 172.

Curiously, the parties' submissions begin to parse the putative plaintiffs, but do so without grappling with the terms of the agreed order. We hear that some drivers consented during the opt-in period, some shortly thereafter, some after undeliverable mailings attributable to PTL, some through duplicate consents, and some more than three years after leaving PTL.[2] The Court cannot tell, however—because the parties have not told it—which of the 110 new consents complies with the agreed order, which violate it, and which might merely be excusably late.

The Court therefore **ORDERS** the parties to meet and confer—which they seem to concede has not yet happened—regarding the proper application of the agreed order to the 110 consents at issue. The Court further **ORDERS** the parties to jointly submit a report concerning the status of each putative plaintiff within 30 days.

PTL also has invoked the separate-but-related issue of the statute of limitations, while Plaintiffs have invoked the fallback option of a separate-but-associated collective action of new opt-in plaintiffs. Plainly, neither is ripe for a decision at this time. Equally plain, the viability of such a parallel class of new plaintiffs, *see generally* 29 U.S.C. § 256(b), is intertwined with the Court's disposition of the late-filed consents. And if discussing these issues now, rather than in a later complaint or summary judgment motion, would advance "the just, speedy, and inexpensive determination of [this] action," Fed. R. Civ. P. 1, the Court encourages counsel to do so.

To be sure, even the most conscientious of counsel might prove unable to resolve all outstanding issues concerning these disputed consents. Yet the Court remains confident that the parties can make substantial progress in defining the contours of the class and narrowing their areas of disagreement, just as they succeeded at the conditional-certification stage. In all events, an agreed order submitted to and entered by the Court is worth the extra effort.

Benjamin Beaton, District Judge
United States District Court

January 12, 2021

Copies to:   All Counsel

---

[2] Plaintiffs, for example, contend that 14 of the disputed opt-ins were not in fact new, 24 were mailed before the opt-in deadline or received within two months of the deadline, 11 had at least 45 fewer days than others to return consents because of undeliverable mailings, and PTL took too long to provide social security numbers to assist in skip tracing. DN 204, at 6601 & n.2. The Court currently lacks sufficient information to resolve these issues, but the parties should not.